1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3      - - - - - - - - - - -     X

4    UNITED STATES OF AMERICA,   :    CR 03-1382(S-1)

5                                :

6

         -against-              :
7                                     United States Courthouse
                                      Brooklyn, New York
8    VITO RIZZUTO,               :

9                                     May 4, 2007
            Defendant.           :    11:00 o'clock a.m.
10

       - - - - - - - - - - -     X
11

12                    TRANSCRIPT OF PLEADING
                      BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
13                    UNITED STATES DISTRICT JUDGE

14
     APPEARANCES:
15

16   For the Government:         ROSLYNN R. MAUSKOPF
                                 United States Attorney
17                               BY: GREGORY ANDRES
                                 Assistant United States Attorney
18                               One Pierrepont Plaza
                                 Brooklyn, New York
19

20   For the Defendant:          JOHN MITCHELL, ESQ.

21

     Court Reporter:             Gene Rudolph
22                               225 Cadman Plaza East
                                 Brooklyn, New York
23                               (718) 613-2538

24

     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.


              GR      OCR      CM      CRR      CSR

2

1          THE CLERK:  United States versus Rizzuto.

2          (Counsel present; appearances noted.)

3          THE COURT:  Good morning.

4          Mr. Mitchell, I understand that your client wishes

5    to withdraw his previously entered plea of not guilty to Count

6    One of the indictment and to enter a plea of guilty to that

7    count pursuant to a plea agreement.

8          MR. MITCHELL:  That is correct, Your Honor.

9          THE COURT:  Very well.

10         MR. ANDRES:  Your Honor, before we get

11   started -- I'm sorry to interrupt already.

12         Just one novelty, if you will.

13         THE COURT:  A what?

14         MR. ANDRES:  A novelty about this plea or -- it's

15   certainly not the standard practice of the office to offer a

16   plea under these terms so I just wanted to make that clear to

17   Your Honor because one part of the plea requires that Your

18   Honor accept the plea, and once you do, it binds all the

19   parties.  If Your Honor chooses not to accept the plea, unlike

20   other cases, it wouldn't bind all of the parties.

21         What I am specifically referring to is

22   Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure,

23   so I just wanted to make that clear to Your Honor.

24         And to the extent that Your Honor is in a position

25   to inform the parties as to whether or not the Court would be

3

1   prepared to accept the plea, provided the allocution is

2   sufficient, I think that's something that might be helpful

3   going forward so that we don't prejudice the defendant in any

4   way, or were the Court not to decide to take the plea.

5            THE COURT:  In other words, we wouldn't want to go

6   through a procedure that was not going to result in the

7   desired outcome.

8            MR. ANDRES:  Correct.  Namely, require the defendant

9   to allocute to crimes that Your Honor wouldn't later accept

10  the plea.

11           The rule itself requires -- says that if there is an

12  agreement that a specific sentence or sentencing range is the

13  appropriate disposition of the case, or that a particular

14  provision of the Sentencing Guidelines, or policy statement,

15  or sentencing factor is or does not apply, such a

16  recommendation or request binds the Court once the Court

17  accepts the plea.

18           In the case of Mr. Rizzuto, the agreed upon sentence

19  is a sentence of ten years of imprisonment, and the other

20  terms with respect to fine or whether those terms are defined

21  or not are all articulated in the plea agreement.

22           One thing just to inform the Court, with respect to

23  the proposed sentence of ten years, whereas in most cases in a

24  RICO murder or murder that's charged as a predicate act in a

25  RICO would require a life sentence, that's not true in this

4

1  case because of the dates.  That is to say, that because the

2  predicate acts and the murders in this case took place in

3  1981, the statutory maximum sentence that Mr. Rizzuto could

4  receive if convicted after trial would be 20 years and not

5  life because the RICO law was not amended until the early

6  nineties which allowed for that -- for it to be 20 years or

7  life if the underlying predicate acts carried a term of

8  20 years.

9         So in defining whether or not ten years is

10 reasonable for these crimes, it's certainly something that the

11 government takes into consideration what the maximum sentence

12 would be, and in this case that's 20 years and not life.

13        There are other reasons to support the plea which I

14 am happy to put on the record once the -- once we get to that

15 stage, Your Honor.

16        MR. MITCHELL:  I also would make the observation

17 that he was extradited pursuant to an extradition request

18 which capped the punishment at 20 years.  So it would be

19 20 years for both of those cases, for both of those reasons.

20        THE COURT:  I understand.

21        What about the question of the victims' families?

22 Have they been consulted about this?

23        MR. ANDRES:  Your Honor, as Your Honor knows,

24 these -- these cases, not this case in particular but

25 certainly the cases relating to the murder of three captains

1   has been going on for sometime.  Clearly, it was something

2   that was charged and tried during the Basciano trial.  We were

3   in contact with the family members during that trial and the

4   family members have been notified of today's proceedings and

5   notified of the terms.

6           Whether they are actually given the opportunity to

7   veto or comment directly, our obligation is primarily to

8   inform them of the proceedings, and they have been notified

9   and my understanding is that they would like to -- we made

10  attempts -- we contacted the Giaccone family.  We were unable

11  to get -- contact all of the Trincheras, but we will certainly

12  do that for the purposes of -- we made attempts to and we

13  certainly will do that for the purposes of sentencing.  They

14  will have a right to speak at sentencing.

15          THE COURT:  Well, I have reviewed the plea

16  agreement.  I understand the terms of the agreement.

17          Subject to hearing the allocution of the defendant,

18  it is my intention, although I can't guarantee it at this

19  moment, that I will accept the plea.  But it is certainly my

20  expectation that I will accept the defendant's plea of guilty

21  pursuant to the terms of this plea agreement.

22          MR. MITCHELL:  Yes, sir.

23          THE COURT:  I believe I understand the reasons why

24  this arrangement has been made, and I think that it is a

25  prudent course of action for the parties and for the Court; of

1  course, subject to hearing from the defendant at the time of

2  his allocution.

3          All right.

4          MR. MITCHELL:  Yes, sir.

5          THE COURT:  Okay.  Mr. Rizzuto, your attorney

6  advises that you wish to plead guilty to Count One of the

7  indictment in which you are charged.  This is a serious

8  decision.  I must be certain that you make it understanding

9  your rights and the consequences of your plea.  I am going to

10  explain certain rights to you and then ask you questions.  I

11  want your answers to be under oath.  The deputy clerk will

12  swear you in.

13          (The defendant duly sworn.)

14          THE COURT:  Mr. Rizzuto, you understand that having

15  been sworn to tell the truth, you must do so.  If you were to

16  deliberately lie in response to any question that I ask you,

17  you could face further criminal charges for perjury.

18          Do you understand?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  If I say anything that you do not

21  understand, or if you need me to repeat anything, you have

22  only to ask.  It is important that you understand everything

23  that goes on in these proceedings.

24          Is that clear?

25          THE DEFENDANT:  Yes, Your Honor.

GR      OCR      CM      CRR      CSR

1          THE COURT:  Mr. Rizzuto, how old are you?

2          THE DEFENDANT:  Sixty-one, Your Honor.

3          THE COURT:  How far did you get with your education?

4          THE DEFENDANT:  Ninth grade.

5          THE COURT:  Where did you go to school?

6          THE DEFENDANT:  I went to Catholic school in Canada.

7          THE COURT:  Catholic school in Canada?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Where in Canada?

10          THE DEFENDANT:  Montreal.

11          THE COURT:  Are you a Canadian citizen?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Is English your primary language?

14          THE DEFENDANT:  I would say so, yes.

15          THE COURT:  What other languages do you speak?

16          THE DEFENDANT:  I speak four languages; Spanish,

17 Italian, French.

18          THE COURT:  Have you had any difficulty in

19 communicating with your client in English, Mr. Mitchell?

20          MR. MITCHELL:  None whatsoever, Your Honor.

21          THE COURT:  Very well.

22          Mr. Rizzuto, I must be certain that whatever

23 decision you make today you make with a clear head.  So I am

24 going to ask you some questions about your health.

25          Are you currently, or have you recently, been under

8

1   the care of a doctor or psychiatrist for any reason?

2          THE DEFENDANT:  Doctor, yes.

3          THE COURT:  For what?

4          THE DEFENDANT:  They said they found a spot in my

5   lungs but they haven't said what's up to now yet.

6          THE COURT:  Have you been --

7          THE DEFENDANT:  They have to give me a CAT scan but

8   they say they will bring me to the hospital but they haven't

9   yet.

10         THE COURT:  When did they --

11         THE DEFENDANT:  Two months ago.

12         THE COURT:  How long?

13         THE DEFENDANT:  Two months.

14         THE COURT:  We will deal with that.

15         MR. ANDRES:  Absolutely, Judge.

16         THE COURT:  In the past 24 hours, have you taken any

17   pills or drugs or medicine of any kind?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  In the past 24 hours, have you drunk any

20   alcoholic beverages?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Have you ever been hospitalized or

23   treated for any drug related problem?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Is your mind clear as you stand here

1  today?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you understand everything being said

4  to you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Mr. Mitchell, have you

7  discussed the question of a guilty plea with your client?

8          MR. MITCHELL:  Yes, sir.

9          THE COURT:  In your view, does he understand the

10  rights that he would be waiving by pleading guilty?

11          MR. MITCHELL:  Yes, sir.

12          THE COURT:  Do you have any question as to your

13  client's competence to proceed today?

14          MR. MITCHELL:  No, sir.

15          THE COURT:  Are you retained?

16          MR. MITCHELL:  Yes, sir.

17          THE COURT:  Mr. Rizzuto, are you satisfied with the

18  assistance that your attorney has given you thus far in this

19  matter?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Is there any reason why you might want

22  to have any further discussions with him before proceeding?

23          THE DEFENDANT:  No reason.

24          THE COURT:  Okay.  You are pleading guilty to

25  Count One of the indictment in which you are charged in

GR      OCR      CM      CRR      CSR

1  03 CR 1384(S-1).  I am going to ask Mr. Andres to state the

2  charge in Count One and to identify the elements of the crime

3  that the government would be required to prove beyond a

4  reasonable doubt to a unanimous jury if you were to go to

5  trial in this case.

6          Mr. Andres?

7          MR. ANDRES:  Your Honor, the defendant is charged

8  with racketeering conspiracy, pursuant to Title 18, Title 18

9  United States Code Section 1962, specifically Section D.  The

10 elements that the government would have to prove with respect

11 to the racketeering conspiracy are:

12          First, that there is an enterprise, namely, the

13 enterprise or association in fact that's alleged in the

14 indictment, the government would have to prove that that in

15 fact existed.

16          Secondly, that there was an interstate commerce,

17 that is to say, that the enterprise affected interstate or

18 foreign commerce.

19          Third, that the defendant was associated with or

20 employed by that enterprise; in this case, conspired with the

21 enterprise.

22          And fourth,  that the defendant knowingly and

23 intentionally agreed that either he or other employees or

24 associates of the enterprise would commit a pattern of

25 racketeering activity.

1    With respect to this indictment and this plea, the

2    pattern of racketeering activity is defined by the

3    racketeering acts to which the defendant is going to plead and

4    those are Racketeering Acts 5-A, which is the conspiracy to

5    murder Alphonse Sonny Red Indelicato, Philip Phil Lucky

6    Giaccone, Dominick Big Trin Trinchera; 5-B, which is the

7    murder of Alphonse Sonny Red Indelicato; Racketeering Act 6,

8    which is the murder of Philip Phil Lucky Giaccone; and

9    Racketeering Act 7, which is the murder of Dominick Trinchera,

10   Big Trin.

11   Those particular crimes are charged under the

12   provisions of New York State law for both murder and murder

13   conspiracy.  New York Penal Law Section 20.00  provides in

14   relevant part, that:

15   When a person engages in conduct which constitutes

16   an offense, another person is criminally liable for such

17   offense when, acting with the mental culpability required for

18   the commission thereof, he solicits, requests, commands,

19   importunes, or intentionally aids such person to engage in

20   such conduct.

21   The aiding and abetting provision of New York law is

22   105.15.  That provides in relevant part -- I'm sorry.  This is

23   the conspiracy, 105.15.

24   A person is guilty of conspiracy in the second

25   degree when, with the intent that the conduct constituting a

GR      OCR      CM      CRR      CSR

1  Class A felony be performed, he agrees with one or more

2  persons to engage in or cause performance of such conduct.

3  The murder provision, the second degree murder

4  provision under New York State law is Section 125.25, which

5  reads in relevant part:

6  A person is guilty of murder in the second degree

7  when with the intent to cause the death of another person he

8  causes the death of such person or a third person.

9  In order for the government to prove beyond a

10  reasonable doubt to a jury that the defendant committed the

11  New York State crime of conspiracy to commit murder, the

12  government would have to prove the following elements beyond a

13  reasonable doubt:

14  That two or more persons knowingly entered into a

15  conspiratorial agreement with the intention to commit the

16  murder charged.

17  That the defendant knowingly became a party to the

18  conspiratorial agreement with the intent to commit the murder

19  charged.

20  And, third, that one of the conspirators acted in

21  furtherance of the agreement to commit the murder charged.

22  To prove a charge of second degree murder under

23  New York Penal Law, it would be necessary for the government

24  to prove beyond a reasonable doubt that the defendant intended

25  to kill another person.

1          And, second, that in accordance with that intent the

2    defendant caused the death of the individuals named.

3          THE COURT:  All right.  Mr. Rizzuto, do you

4    understand the charge against you in Count One and the

5    elements of the crime that the government would have to prove

6    beyond a reasonable doubt to a jury at a trial if you were to

7    go to trial in this case?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  You have certain rights and

10   I am going to discuss those rights with you now.  Please

11   listen carefully to your rights.

12         You have the right to plead not guilty to this

13   charge.   No one can be forced to plead guilty.

14         Do you understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  If you plead not guilty to this charge,

17   or persist in a plea of not guilty, you have the right under

18   the Constitution and laws of the United States to a speedy and

19   public trial before a jury with the assistance of your

20   attorney.

21         Do you understand?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  At any trial you would be presumed to be

24   innocent.  You would not have to prove that you were innocent.

25   This is because under our system of laws, it is the government

14

1   that must come forward with proof that establishes beyond a

2   reasonable doubt that you are guilty of the crime charged.

3          If the government failed to meet this burden of

4   proof, the jury would have the duty to find you not guilty.

5          Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  In the course of a trial, witnesses for

8   the government would have to come here to court and testify in

9   your presence.  Your attorney would have the right to

10  cross-examine these witnesses.  He could raise legal

11  objections to evidence the government sought to offer against

12  you.  He could offer evidence in your behalf if you thought

13  there was evidence that might help you in this case.

14         Do you understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  At a trial you would have the right to

17  testify in your own behalf if you wished to do so.  On the

18  other hand, you could not be forced to be a witness at your

19  trial.  This is because under the Constitution and laws of the

20  United States, no person can be compelled to be a witness

21  against himself.  If you wish to go to trial but chose not to

22  testify, I would instruct the jury that they could not hold

23  that against you.

24         Do you understand that?

25         THE DEFENDANT:  Yes, Your Honor.

GR      OCR      CM      CRR      CSR

1          THE COURT:  If instead of going to trial you plead

2     guilty to the crime charged, and if I accept your guilty plea,

3     you will be giving up your right to a trial and all the other

4     rights I have just discussed.  There will be no trial in this

5     case as far as you are concerned.  There will be no appeal on

6     the question of whether you did or did not commit this crime.

7          The only thing you could appeal would be if you

8     thought I did not properly follow the law in sentencing you.

9     Otherwise, I will simply enter a judgment of guilty based upon

10    your plea of guilty.

11         If you do plead guilty, I will have to ask you

12    certain questions about what you did in order to convince

13    myself that you are guilty of the charge.  You will have to

14    answer my questions and acknowledge your guilt.  If you do so,

15    you will be giving up your right not to incriminate yourself.

16         Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.  Mr. Rizzuto, are you willing

19    to give up your right to a trial and all the other rights I

20    have just discussed with you?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  I have in front of me a plea agreement

23    in United States against Vitc Rizzuto, 03 CR 1382(S-1).  It is

24    marked as Court's exhibit number one.  It is dated today,

25    May 4, 2007.  It consists of five pages.  I am going to hand

1   it to the defendant and his attorney and ask some questions.

2           Mr. Rizzuto, have you read this document?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Have you discussed it with your

5   attorney?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Has he answered any and all questions

8   that you had about it?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  Do you understand your

11  rights and your obligations under this agreement?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  All right.  Counsel, in your view, does

14  your client understand his rights and obligations under this

15  plea agreement?

16          MR. MITCHELL:  Yes, sir.

17          We have thoroughly discussed the agreement.

18          THE COURT:  Okay.  Please turn to page five of the

19  agreement, the last page.

20          Mr. Rizzuto, on page five of the agreement, is that

21  your signature by your name?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Did you sign the agreement today?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Mr. Mitchell, you also executed the

GR     OCR     CM     CRR     CSR

1  agreement?

2          MR. MITCHELL:  Yes, sir, I did.

3          THE COURT:  And the government has done so as well?

4          MR. ANDRES:  Yes, Judge.

5          THE COURT:  All right.  Please return the agreement

6  to me.

7          Mr. Rizzuto, I have an important question to ask

8  you.  Is there any other agreement that has been made to get

9  you to plead guilty that is not contained in this plea

10  agreement?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Very well.

13          I am going to go over the statutory penalties

14  associated with this crime and the particular penalty that is

15  articulated in paragraph two.

16          The statutory penalties for violation of

17  18 U.S. Code 1962(d), which is racketeering conspiracy, are as

18  follows:

19          There is no minimum term of imprisonment.

20          There is a maximum term of imprisonment of 20 years.

21          The maximum supervised release term is three years.

22  That would follow any term of imprisonment.  If a condition of

23  release is violated, you could be sentenced up to one year of

24  imprisonment without any credit for the time you have

25  previously served in prison or the time you've previously

GR     OCR     CM     CRR     CSR

1    served on supervised release.

2              The maximum fine is $250,000 or twice the gross

3    profits of the enterprise.

4              There is a $100 special assessment, which is

5    mandatory.

6              Restitution will be determined by the Court and, in

7    addition, you will be subject to removal or deportation from

8    the United States.  Since you fought extradition, I assume

9    that that would not be a problem for you.

10             Do you understand the statutory penalties associated

11   with this plea?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  In addition, as has been

14   pointed out by the government, that the parties agree that

15   pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

16   Procedure, a specific sentence of ten years imprisonment,

17   three years supervised release, and a $100 special assessment,

18   as well as any fine and restitution imposed consistent with

19   the statutory penalties is an appropriate disposition of the

20   case.

21             Is that your agreement?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Very well.

24             Inasmuch as the Court expects that, should your

25   allocution be satisfactory, it will agree to the 11(c)(1)(C)

GR     OCR     CM     CRR     CSR

19

1  disposition, which has just been articulated, I don't think it

2  is necessary for me to go over the issue of the sentencing

3  guidelines.  The issue has been resolved through the

4  discussion of the statute and also the bargained for

5  disposition.

6         Is that agreeable?

7         MR. ANDRES:  Yes, Judge.

8         MR. MITCHELL:  Yes, Judge, I agree with it.

9         THE COURT:  Very well.

10        Sir, in the plea agreement letter, which is dated

11 today, May 4, 2007, you have just told me you have discussed

12 that with your attorney and which you signed today, there is

13 an agreement regarding your right to appeal your sentence.

14 The agreement letter says, and I want to make sure that you

15 understand this, by signing this agreement you agree not to

16 appeal or in any other way challenge the sentence that I

17 impose upon you if it is 120 months or less, which is ten

18 years.

19        If I were to sentence you to more than ten years,

20 and you believed there was a legal or other error in my doing

21 that, you would then have a right to appeal your sentence to

22 the United States Court of Appeals for the Second Circuit.

23        Do you understand that?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  Do you understand that you have the

GR      OCR      CM      CRR      CSR

1  right to appeal only if I sentence you to more than ten years?

2        THE DEFENDANT:  Yes, Your Honor.

3        THE COURT:  Do you understand that even if the

4  sentence I give you -- well, I think it is very clear, that if

5  I sentence you to the ten years you are going to be bound by

6  your guilty plea and not permitted to withdraw it, and you

7  will not be able to challenge or appeal that sentence, as long

8  as the sentence is ten years or less, as we have discussed.

9        Do you understand that?

10       THE DEFENDANT:  Yes, Your Honor.

11       THE COURT:  Anything else?

12       MR. ANDRES:  Only to the extent that ten years, more

13 than ten years, as it relates to the term of imprisonment.  If

14 the sentence were to be ten years and some fine, that wouldn't

15 constitute something that's more than ten years when you are

16 defining that term or saying sentenced to more than ten years.

17 I think it is clear to all the parties that that relates to

18 the term of imprisonment.

19       THE COURT:  Right.  It's only that component of the

20 sentence which is subject to the ten-year limitation.

21       MR. MITCHELL:  We understand, Your Honor.

22       THE COURT:  Do you understand that?

23       Do you understand that, sir?

24       THE DEFENDANT:  Yes.

25       THE COURT:  All right.

1    Do you have any questions you would like to ask me

2 about the charge, your rights or anything else related to this

3 matter that may not be clear, Mr. Rizzuto?

4    THE DEFENDANT:  No, Your Honor.

5    MR. MITCHELL:  There is just one matter, Your Honor.

6    THE COURT:  Okay.

7    MR. MITCHELL:  As the Court can see, later on in

8 paragraph three at page three, there is a discussion about

9 waiver of defenses.  I just want to make the record clear -- I

10 just want the record to be clear, that it is our position and

11 our understanding of this agreement that in the event that for

12 some reason, and I don't foresee any, that the plea would be

13 set aside or vacated, that Mr. Rizzuto would not waive any

14 defenses that existed at the time that he took the plea.

15    So, for example, if he had a viable Statute of

16 Limitations defense today, that if he pled -- by pleading

17 guilty, and if in the event somehow the plea was vacated, he

18 would not waive that Statute of Limitations defense.  He would

19 be returned, if you will, to status quo at the time he took

20 the plea.

21    MR. ANDRES:  Your Honor, I believe that to be the

22 appropriate interpretation of this provision.

23    Just to be clear, we are not making some additional

24 promise or anything that's outside the purposes of the

25 agreement.  But when read, the purpose -- that provision of

1  the plea agreement, the purpose of it is not to generate a new

2  Statute of Limitations defense for somebody.  For instance, if

3  Mr. Rizzuto were to plead guilty today, ten years from now he

4  can't say, or argue, I want my plea back and then, to the

5  extent he got it, have created a Statute of Limitations

6  problem, Statute of Limitations defense by waiting ten years

7  and asking for his plea back.

8      I think what Mr. Mitchell is saying is that he

9  believes as of today, today Mr. Rizzuto would have at least

10  some plausible, or at least could make an argument in favor of

11  the Statute of Limitations and that he is asking that that not

12  be waived and, again, that's my understanding of the -- of the

13  purpose of this agreement, if that satisfies the Court.

14      THE COURT:  It will be waived if this plea is

15  accepted and the sentence is executed.

16      MR. MITCHELL:  I understand, Your Honor.

17      All I am saying, in the event that for some reason

18  the plea would be vacated, he would just be returned to status

19  quo before the plea in terms of whatever defenses he might

20  have.  I think we all agree on it.

21      THE COURT:  I think we all agree on it.

22      MR. MITCHELL:  Yes, sir.

23      THE COURT:  That's fine.

24      MR. MITCHELL:  The one other inducement, if you

25  will, Your Honor, is that the government has agreed that they

23

1   would not object to our requesting the Court that the Court

2   recommend to the Bureau of Prisons that Mr. Rizzuto would be

3   incarcerated at the facility in Ray Brook, New York.  That's

4   the closest facility.

5           THE COURT:  Where is Ray Brook?

6           MR. MITCHELL:  It's up near Lake Placid, I think.

7           It is the closest facility to his home, Your Honor.

8           THE COURT:  In Montreal?

9           MR. MITCHELL:  Yes, sir.

10          THE COURT:  I am familiar with the area.  I

11  understand why you would want that.

12          MR. ANDRES:  Obviously, subject to any -- we and the

13  Court, to any designation or what have you by the BOP, we

14  obviously have no objection.

15          MR. MITCHELL:  The Court recommends, I understand.

16          THE COURT:  The Court cannot require it.

17          MR. MITCHELL:  I understand.

18          THE COURT:  The Court can recommend it and, frankly,

19  I would certainly recommend that he be, and that any defendant

20  who pleads guilty or who is found guilty by a jury, be

21  designated to an appropriate facility as close to his family

22  as possible.

23          MR. MITCHELL:  Yes, sir.

24          THE COURT:  Okay.

25          MR. MITCHELL:  Thank you.

GR      OCR      CM      CRR      CSR

1          THE COURT:  All right.  Mr. Mitchell, is there

2     anything that you would like me to discuss with your client in

3     further detail before I proceed to formal allocution?

4          MR. MITCHELL:  No, sir.

5          THE COURT:  All right.  Do you know of any reason

6     why your client should not enter a plea of guilty to the

7     charge?

8          MR. MITCHELL:  No, sir.

9          THE COURT:  Are you aware of any viable legal

10    defense to the charge?

11         MR. MITCHELL:  No, sir.

12         THE COURT:  All right.  Mr. Rizzuto, are you ready

13    to plead?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Okay.  Mr. Rizzuto, how do you plead to

16    the charge contained in Count One of the superseding

17    indictment (S-1), guilty or not guilty?

18         THE DEFENDANT:  Guilty.

19         THE COURT:  Are you making this plea of guilty

20    voluntarily and of your own free will?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Has anyone threatened or forced you to

23    plead guilty?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Other than the agreement with the

1  government, has anyone made you any promise that caused you to

2  plead guilty?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Other than the agreement with the

5  government, has anyone made you any promise about the sentence

6  you will receive?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Very well.

9          I would like you at this time to describe, in your

10  own words, what you did to commit the crime set forth in Count

11  One of the indictment.

12          I see that you are planning to read.  Please read

13  your allocution slowly --

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  -- for us.  Okay?

16          Go ahead.

17          THE DEFENDANT:  Between February 1, 1981 and

18  May 5, 1981, I conspired with others to conduct the affairs of

19  an association in fact enterprise through a pattern of

20  racketeering activity.  Specifically, on May 5, 1981, acting

21  with others in Brooklyn, New York, I committed the

22  racketeering acts of conspiracy to murder and the murder of

23  Alphonse Indelicato, Philip Giaccone and Dominick Trinchera.

24          MR. ANDRES:  Judge, just to fill that out a little.

25          THE COURT:  That would be helpful.

1          MR. ANDRES:  The association in fact is the

2    association in fact charged in the indictment, which is the

3    Bonanno-Massino Organized Crime Family, La Cosa Nostra.

4          The government would prove through the testimony of

5    cooperating witnesses, law enforcement witnesses, surveillance

6    evidence, forensic evidence, including the recent recovery of

7    the bodies of Dominick Trinchera and Philip Giaccone some two

8    to three years ago now, in Queens, as well as the recovery of

9    the body of Alphonse Indelicato, which happened approximately

10   a month after his murder, that 26 years and one day ago from

11   today, Mr. Rizzuto was involved in the murder of these three

12   men, the three captains, as you've heard:  Dominick Trinchera,

13   otherwise known as Big Trin; Philip Giaccone, Phil Lucky; and

14   Sonny Red Indelicato.

15         Your Honor is actually very aware of the evidence as

16   it pertains to these murders because, again, we have tried the

17   Massino case in which that was at issue.

18         Beyond that, Judge, we'd also prove that since that

19   time, Mr. Rizzuto has maintained an association, continued to

20   conspire with the Bonanno Organized Crime Family, and we would

21   in fact prove that he was a member of that enterprise.

22         THE COURT:  You are asking me to sentence this

23   defendant to a specific sentence which is ten years less than

24   the maximum.  You haven't told me anything about what he did.

25   He's admitting he did something.  I've got all these

GR          OCR          CM          CRR          CSR

1  defendants in this case who have admitted or have been found

2  guilty of being involved in these murders.  Yet, I am just

3  being told he was involved.

4         Why should I accept a plea to a specific sentence if

5  I don't know what he did?  I don't think it is enough,

6  frankly.

7         So tell me what he did.  Do you know what he did?

8  You have witnesses who are going to testify to what his role

9  was in these murders?

10         MR. ANDRES:  Judge, absolutely.

11         I don't know if you want that from the government or

12  from the defense.

13         THE COURT:  I want it from the defendant.  What did

14  he do?

15         MR. MITCHELL:  Your Honor, the defendant has already

16  stated in his allocution that he committed the racketeering

17  acts.  In fact, that he conspired to murder these individuals;

18  and beyond that, that he did participate in the murder of

19  those individuals.

20         THE COURT:  That's fine.  That is as far as it goes.

21         I am being asked to sign on to an agreement that I

22  don't have the obligation to sign on to.  Do I?

23         MR. MITCHELL:  No, sir.

24         THE COURT:  Then I want to know more about it.  This

25  is not some game.  I am the judge.  It is unacceptable.

1            Was he the driver?  Was he one of the shooters?

2            I sat here for weeks listening to people tell me

3  about these murders.  I still don't know what his role was.

4  Why should I accept his plea and accept a ten-year sentence

5  when he could be sentenced to 20 years?  People have gone to

6  jail for the rest of their lives, as a practical matter,

7  because of their involvement in these crimes.

8            If he's got something more to tell me, I'd like to

9  hear it before I accept this plea.

10           MR. MITCHELL:  May I have a moment, Your Honor?

11           THE COURT:  Yes.

12           (Pause.)

13           MR. ANDRES:  Your Honor, to the extent that we could

14  just take a brief adjournment?

15           THE COURT:  That's fine.

16           MR. ANDRES:  We don't object to that.

17           THE COURT:  I will give you ten minutes.

18           MR. ANDRES:  Thank you, Judge.

19           (Recess taken.)

20           THE CLERK:  United States versus Rizzuto.

21           THE COURT:  All right.

22           MR. MITCHELL:  Your Honor, what the defendant would

23  tell the Court is that what happened on that day is that he

24  was there.  He was armed with a gun.  He went in to the room

25  and he announced that there was a holdup, and at that time the

1  other coconspirators came in and shot the individuals.

2          THE COURT:  All right.  Let him tell the Court.

3          THE DEFENDANT:  That's it, Your Honor; exactly what

4  Mr. Mitchell says.

5          THE COURT:  All right.  So what happened?

6          THE DEFENDANT:  Well, I was one of the guys who was

7  to participate in this.  My job was to say, "It's a hold up,"

8  when I went in the room.  "So everybody stand still."  This

9  moment the other people came in and they started shooting the

10  other guys.

11          THE COURT:  You were armed?

12          THE DEFENDANT:  I was armed.

13          THE COURT:  All right.

14          MR. ANDRES:  Your Honor, just, again, I

15  don't -- it's certainly -- in the government's view, that's

16  more than sufficient for the purposes of an allocution.

17  Whether or not that's something that we -- the actual proof

18  would be at trial or not, but there is clearly --

19          THE COURT:  It is his allocution, not yours.

20          MR. ANDRES:  I understand.

21          But that the government would prove that Mr. Rizzuto

22  was in with a gun, with other people who were armed for the

23  purpose of killing the individuals, the three captains.

24          THE COURT:  I think that's what he's just allocuted.

25          Isn't that right, sir?

GR     OCR     CM     CRR     CSR

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Yes.

3          MR. ANDRES:  Yes.  Thank you, Judge.

4          THE COURT:  Let me just point out, and Mr. Andres

5     knows this, and it is no reflection on any of the counsel

6     here, but I am very reluctant to take pleas under 11(c)(1)(C).

7     I have told Mr. Andres that on a number of occasions.  That's

8     why I require that there be a fulsome allocution at the time

9     so that at the time that I accept the plea, and therefore

10    accept the bargained for sentence, I feel that there is a

11    sufficient record to justify accepting a plea under those

12    circumstances.

13          Do you understand that, Mr. Mitchell?

14          MR. MITCHELL:  I do, Your Honor.

15          THE COURT:  Okay.

16          MR. ANDRES:  Judge, just for the record, I am

17    certainly aware of that.  There have only been two such pleas

18    in the more than a hundred people that have been charged in

19    the related Bonnano cases.

20          THE COURT:  I know.  That's because I told you I

21    didn't want to take those pleas.

22          MR. ANDRES:  I understand.

23          Given this crime happened over 26 years ago, given

24    that it gives some finality in part to the victims, it allows

25    us to return some of the evidence at least to some of the

GR      OCR      CM      CRR      CSR

1   victims, and given the time passage, while that's no excuse,

2   it's certainly one of the things that factors into the

3   government's calculation as to how to dispose of the case.

4        THE COURT:  I agree completely with the government's

5   reasoning in doing so in this situation.  I simply require

6   more information before I make the final determination as to

7   whether to accept an 11(c)(1)(C) plea.  I think the government

8   has done the right thing here in terms of proffering this

9   agreement, and I have no difficulty in accepting the plea, now

10  that I have a complete allocution.

11       All right.

12       MR. MITCHELL:  Very well.

13       MR. ANDRES:  Thank you, Judge.

14       THE COURT:  Based on the information you have given

15  me, Mr. Rizzuto, I find that you are acting voluntarily, that

16  you fully understand the charge, your rights and the

17  consequences of your plea.  There is, moreover, a factual

18  basis for your plea.  I therefore accept your plea of guilty

19  to Count One of the indictment pursuant to the plea agreement,

20  and specifically paragraph two of the plea agreement that

21  requires me to sentence you to a specific sentence of ten

22  years of imprisonment.

23       All right.

24       MR. MITCHELL:  Very well.

25       MR. ANDRES:  Your Honor, if we could ask for an

GR     OCR     CM     CRR     CSR

1  expedited PSR in this case?  This case has been -- Mr. Rizzuto

2  was indicted in 2004.  All of the issues with respect to the

3  conduct have already been resolved in past PSRs.  The

4  sentencing issues have been resolved as a result of the

5  agreement.  So what remains obviously is the interview of the

6  defendant and some investigation with respect to financial

7  issues and his family.  But we would ask that this be

8  expedited to the extent possible and that we set a quicker

9  sentencing date.

10           That absolutely, obviously, would also facilitate

11  any medical treatment that Mr. Rizzuto needed because I think

12  the care tends to be more thorough, that is, the Bureau of

13  Prisons has the ability to treat its inmates more thoroughly

14  outside of the Metropolitan Detention Center.

15           MR. MITCHELL:  We would join in that application,

16  Your Honor.

17           THE COURT:  That's fine.

18           The only question is, how expeditiously do you think

19  the Probation Department can prepare such a report, which I

20  think for the most part is prepared as to the overall

21  activities that are charged in the indictment, since there are

22  dozens and dozens of defendants on that indictment.

23           MR. ANDRES:  Your honor, if we could shoot for

24  May 25th, I'll contact the Probation today.  And to the extent

25  that this doesn't work, obviously, we will go from there.  But

GR       OCR       CM       CRR       CSR

1    at least that gives us a target date, if that's acceptable to

2    you.

3         MR. MITCHELL:  That's acceptable to the defense.

4         THE COURT:  Yes.  May 25th, at 10:00 am.  That's the

5    day before the Memorial Day holiday so we will do it in the

6    morning.

7         MR. MITCHELL:  Very well, sir.

8         THE COURT:  Please ask the Probation Department to

9    make every effort.

10        Mr. Rizzuto, you will be contacted by a Probation

11   Officer, hopefully very, very soon, in connection with an

12   interview.  Mr. Mitchell will want to be present for the

13   interview.  Please provide the information that the Probation

14   Officer needs to complete a presentence investigation report.

15        The report will be provided to you and your

16   attorney.  You will have an opportunity to review it.  If

17   there is anything in the report that is in error, or if there

18   is anything about the report that leaves out some important

19   element of your background that would help me as to those

20   portions of the sentencing that I still have some control

21   over, then your attorney will provide that information to me,

22   to the government and to the Probation Officer.

23        I review everything very carefully, as sentencing is

24   my most important responsibility.

25        MR. ANDRES:  Judge, with respect to any outstanding

GR     OCR     CM     CRR     CSR

1   medical issues or treatment, to try to facilitate for

2   Mr. Rizzuto, I am happy to contact the Bureau of Prisons.

3   It's a little hard for me if I don't know what the specific

4   issues are.

5           I would just ask that if Mr. Mitchell could write me

6   a letter, makes it easier for me to then forward that to the

7   Bureau of Prisons in the absence of some judicial intervention

8   prior to that happening, and then obviously they can reserve

9   the right to come back to the Court if the results aren't

10  satisfactory.

11          THE COURT:  I would like you to do that,

12  Mr. Mitchell.  Provide a letter to the government, with a copy

13  to the Court.

14          Based on what Mr. Rizzuto has told me, apparently

15  there has been some identification of a spot on his lung and

16  he needs a CAT scan to further delineate what the problem is,

17  if it is a problem that needs some sort of surgical

18  intervention or not, or medical intervention.  The sooner he

19  gets that particular test the better.  So whatever can be

20  done, at least in the first instance, to get him the CAT scan

21  while he is here in the center of the medical excellence of

22  the world, before he goes to the country, wherever that may

23  be, and it is harder for him to get that kind of attention,

24  from tertiary providers, the better.  Let's get it done.

25          MR. MITCHELL:  Thank you, Judge.

1          MR. ANDRES:  Thank you.

2          THE COURT:  Anything else from the government?

3          MR. ANDRES:  No, Judge.

4          THE COURT:  Anything else from the defense?

5          MR. MITCHELL:  No.

6          THE COURT:  Thank you.  Have a nice day.

7          Thank you, marshals.

8          (Matter concludes.)

GR      OCR      CM      CRR      CSR